# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00618-CR

---

**Jordan Milan Greenlee, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9024075, HONORABLE JON N. WISSER, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

A jury found appellant Jordan Milan Greenlee guilty of attempted capital murder, and the district court assessed his punishment at twenty-five years' imprisonment. *See* Tex. Pen. Code Ann. § 15.01 (West 2003), § 19.03 (West Supp. 2004). Appellant contends: (1) the evidence is legally and factually insufficient to sustain the jury's verdict; (2) the court erred during trial by making an inappropriate remark from the bench and by permitting the State to call a witness not on its pretrial witness list; and (3) a new trial should have been granted after new evidence was discovered. We will overrule these contentions and affirm the conviction.

### *Sufficiency of Evidence*

Where there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, our standard of review is whether a rational trier of fact could have found the essential

elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, at *20; *see Johnson*, 23 S.W.3d at 11.

In this cause, the jury found appellant guilty of attempting to murder Edward Vargas in the course of a robbery or attempted robbery. *See* Tex. Pen. Code Ann. 19.03(a)(2). Appellant challenges the sufficiency of the evidence only as to the robbery element. That is, he concedes that the State proved he was guilty of attempted murder, but urges that the State failed to prove he was guilty of attempted capital murder. We therefore review the evidence to determine whether a

2

rational trier of fact could have found beyond a reasonable doubt that appellant was in the course of committing or attempting to commit robbery when he attempted to murder Vargas.

Appellant lived in Austin for about a year, during which time he met Craig Manuel and Christian Palmer. Manuel and Palmer, who shared a two-bedroom apartment on South First Street in Austin, were small-time marihuana dealers. In Palmer's case, this marihuana was often supplied by Edward Vargas.

After leaving Austin and returning to Pennsylvania, and about one month before the offense, appellant telephoned Palmer and asked if he could arrange for appellant to purchase some marihuana. Appellant told Palmer that the marihuana in Pennsylvania was more expensive and of poorer quality than the marihuana in Texas. Palmer agreed to help appellant. Appellant called Palmer a few weeks later and told him that he was on his way to Austin to consummate the marihuana deal. Appellant, driving a rented car, arrived in Austin on April 18, 2001. With him were James Edwards, a longtime friend, and Charles Maley, a drug dealer who was said to be bankrolling the marihuana purchase.

Leaving Maley at a hotel, appellant and Edwards drove to the South First Street apartment where they met Palmer and Manuel. The four men played video games and smoked marihuana. At some point, Palmer left the apartment and drove to Vargas's residence in his pickup truck. He then drove Vargas to an unknown location where Vargas obtained a black garbage bag containing ten pounds of marihuana. Palmer and Vargas then returned to Palmer's apartment to close the transaction.

At the apartment, Vargas gave appellant the bag of marihuana and appellant gave Vargas $4000 in cash. Appellant and Edwards began to weigh the marihuana as Vargas counted his money. The men continued to smoke marihuana and drink beer. Vargas telephoned a friend, Phillip Wiley, and arranged for Wiley to come to the apartment and give him a ride home.

What happened next was disputed. According to the State's witnesses, appellant suddenly pulled a pistol from his waistband and announced, "This is a jack" or "This is a stickup." Palmer testified, "He was putting the gun in our face telling us to give him the cash, the weed and everything else. You know, give us everything, and he wanted to get out of there." Appellant moved closer to Vargas, pointed the gun at him, and demanded the money. Vargas refused, telling appellant, "It's not my weed. I'm not going to give it up. You're going to have to kill me to take anything from me." Edwards urged appellant to shoot Vargas. Appellant fired one or two warning shots into the ceiling. Wiley arrived at the apartment in response to Vargas's call; appellant ordered him to sit down. Palmer asked appellant why he was robbing them. Appellant replied, "Sorry I got to do this." When appellant began to threaten Wiley, who had nothing to do with the marihuana deal, Vargas kneeled, pointed to his head, and told appellant, "Get it—get it over and done with." Edwards asked appellant, "What are you waiting on?" Appellant then shot Vargas in the head at point-blank range. After Vargas fell to the floor, appellant shot him again.

According to Edwards, who testified for the defense, appellant shot Vargas in self-defense. Edwards testified that as he and appellant were weighing the marihuana, Vargas pointed a pistol at them and said, "[Y]ou know, we're not going anywhere. He was not letting us take the marihuana, and he stated a few times that he was going to kill us." Edwards testified that he believed

4

that his and appellant's lives were in danger.  When Vargas's attention was diverted, appellant took the opportunity to pull out his own pistol and shoot Vargas.  Appellant and Edwards then ran from the apartment, taking the marihuana and Palmer's scales with them.

Appellant and Edwards returned to the hotel in the rental car, and later left Austin on a bus.  The car was found at the hotel by police officers investigating the shooting.  The marihuana was in the car, but the money was apparently never found.

Appellant asserts that the State failed to prove a theft, and therefore failed to prove that he shot Vargas in the course of a robbery.  He argues that there is no direct evidence that he or Edwards took the money, and that they could not steal the marihuana because they had paid for it.  It was not necessary, however, for the State to prove a completed robbery, much less a completed theft.  *See Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996) (proof of completed theft not required to establish robbery).  While an intent to steal must be shown to prove a robbery or attempted robbery, this intent may be inferred from the circumstances.  *Id.*  In a prosecution for capital murder in the course of a robbery or attempted robbery, the State must prove only that the killer formed an intent to steal before or at the time of the murder.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

The State's witnesses testified that appellant pointed a gun at Vargas and the other persons present, announced that this was a "jack" or a "stickup," and demanded "the cash, the weed and everything else."  This testimony, viewed in the light most favorable to the verdict, supports a finding beyond a reasonable doubt that appellant was in the course of committing or attempting to commit robbery when he shot Vargas.  Points of error five and six are overruled.

5

Appellant's challenge to the factual sufficiency of the evidence rests in part on his claim, rejected above, that a theft was not shown. In addition, he asserts that the State's witnesses were not credible. He correctly points out that their testimony varied with respect to the details of the offense. This is hardly surprising, however, given the shock of events and their intoxicated state at the time. He also points to evidence that Vargas may have been armed despite his testimony to the contrary, and claims that Edwards's testimony that appellant shot Vargas in self-defense was consistent with many of the circumstances shown by the evidence.

It was the jury's task to weigh the evidence and determine the witnesses' credibility. Viewing all the evidence in a neutral fashion, we do not find the jury's verdict to be manifestly unjust. The evidence of guilt is neither so weak nor the contrary evidence so strong as to preclude a finding beyond a reasonable doubt that appellant shot Vargas in the course of committing or attempting to commit robbery. Point of error four is overruled.

### *Trial Errors*

In his first point of error, appellant contends the trial court improperly conveyed his opinion of the case in a remark to the jury. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). Late on the afternoon of the second day of trial, the prosecutor told the court that the State had two remaining witnesses, both of whom would be available the following morning. What followed next gives rise to appellant's complaint:

> THE COURT: Okay. Unless we hear some strong objection from the members of the jury, then we're going to recess about six minutes early. Just another one of those speak now or forever hereafter hold your peace.

6

|               | You're protesting? |
|---|---|
| JUROR: | Not unless I want to be murdered. |
| THE COURT: | Well, we don't want—certainly we don't want any more of that. If you would be so kind as to return a few minutes before 9:00 tomorrow, we'll continue. |

Appellant voiced no objection, and after a few more concluding remarks to the jury, the court recessed the trial until the following morning.

Before the jury entered the courtroom the next day, appellant for the first time voiced objections to the court's remarks of the previous afternoon:

| MR. EVANS: | . . . . Yesterday afternoon Ms. Valdez, towards the end—at the end of the day made a comment that she would be willing to stay late but she was afraid that the rest of the jury might murder her. The court made a comment at that point that we've had enough of that here. |
|---|---|
| MR. NIELSEN: | The State would argue that's not the statement that you made, Your Honor. That is an incorrect assertion as to the statement you made. |
| THE COURT: | Okay. I have no recollection of what the joke was. |
| MR. EVANS: | I understand, Your Honor, but Your Honor, I just—the defense would assert, with all due respect to the Court, that it was an inappropriate remark, Your Honor. We would object to that remark made by the Court and would ask for a mistrial at this time. |
| THE COURT: | I don't recall having made the remark. The State doesn't remember it. It's not on the record, so I don't think anyone knows what the remark was. We're not even trying a murder case, and as I recall all the jurors laughed. So I'm overruling the objection. |

7

Appellant notes that the jury was told during voir dire that appellant had elected to have the court assess punishment. In that connection, the prosecutor told the jurors that the judge would hear facts the jury would not hear: "Whether the defendant was a choirboy; whether he'd never been in trouble; whether he had been in trouble. That kind of thing. Things that you may not hear on the guilt/innocence phase of the trial." Appellant argues that the court's remark that "we've had enough of that [murder] here" suggested to the jury that appellant was guilty of a murder of which the jury was not aware. He contends this tainted his presumption of innocence, was fundamental error of constitutional dimension, and did not require a timely objection to be raised on appeal.

Appellant relies on the opinion in *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). In that case, the trial court told the jury panel as voir dire began that the delay it had experienced was the result of ongoing plea negotiations; that the defendant "has been back and forth so I finally told him I had enough of that, we are going to trial"; and that "I prefer the defendant to plead because it gives us more time to get things done . . . . [W]e were all trying to work toward that and save you time and cost of time, which you have been sitting here and I apologize about that." *Id.* at 130. There was no objection to the court's remarks. A plurality of the court of criminal appeals held that the trial court's remarks to the jury tainted the defendant's presumption of innocence:

> A juror who knows at the outset that the defendant seriously considered entering into a plea agreement no longer begins with a presumption that the defendant is innocent. A juror who hears the judge say that he would have preferred that the defendant plead guilty might assume that the judge knows something about the guilt of the defendant that the juror does not.

8

*Id.* at 132. Acknowledging that an objection usually must be made to remarks by the court in order to preserve error, the plurality was of the opinion that the remarks in that case were fundamental error of constitutional dimension and required no objection to preserve the error for appeal. *Id.* at 131-32.

The State refers us to the opinion in *Jasper v. State*, 61 S.W.3d 413 (Tex. Crim. App. 2001). In that case, the trial court interrupted defense counsel's cross-examination of a State witness to correct a misstatement of the witness's earlier testimony, and in a manner that indicated a degree of irritation with counsel. *Id.* at 420. Later, the court interrupted counsel's cross-examination of another witness to clear up a point of confusion as to whether the witness had made a written statement. *Id.* at 421. In neither instance did the defendant object to the court's remarks. Pointing out that *Blue* was a plurality opinion of limited precedential value, the court of criminal appeals held that the court's remarks were not so serious as to infringe the presumption of innocence or taint the jury's impartiality. *Id.*

We hold that the trial court's remark of which appellant complains, like the remarks in *Jasper*, did not rise to the level of fundamental constitutional error. The court's remarks in *Blue* were patently improper and clearly calculated to convey the court's opinion of the defendant's guilt. The remark by the court in this cause, on the other hand, was a light-hearted response to the juror's joking suggestion that she would be "murdered" by her fellow jurors if she were to suggest continuing the trial that day. It is unlikely that the jury read into the remark the sinister implications suggested by appellant. In the absence of a timely and specific objection, which is lacking here, no error is presented. Point of error one is overruled.

In point of error two, appellant urges that the district court abused its discretion by permitting testimony by an expert witness who was not timely disclosed to the defense pursuant to a pretrial discovery order. The witness in question is Dr. David Harshaw, the emergency room physician who initially treated Vargas at Brackenridge Hospital.

The State filed its first witness list on April 4, 2002. In addition to the list of names, which did not include Harshaw, there was a written notation, "Medical witness for victim's injuries." On June 6, 2002, appellant filed a motion for discovery asking, among other things, for the names and addresses of all the witnesses and expert witnesses the State intended to call at trial. The motion was granted. On August 5, 2002, the State filed a notice of expert witnesses naming "Dr. Kennedy (or other medical doctor)" at Brackenridge Hospital "re: injuries to victim." Dr. Harshaw was first named in a supplemental witness list filed by the State on August 12, 2002. He was also named in a final list of witnesses filed by the State on August 19, 2002.[1]

Appellant's trial began on August 26, 2002, with jury selection and the State's first witness. After the jury was dismissed for the day, and in anticipation of Dr. Harshaw's planned testimony the following day, appellant objected that the State had not given proper notice pursuant to article 39.14(b). Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp. 2004). The statute provides that on the motion of a party, the trial court may order the disclosure of "the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705," that is, the party's expert witnesses. *See* Tex. R. Evid. 702, 703, 705. Article 39.14(b) requires that the names be disclosed "not later than the 20th day before the date the trial begins."

---

[1] Another physician named in the August 12 and 19 lists, Dr. Eric Haas, did not testify.

Appellant complained that the State failed to give timely notice under the statute of its intention to call Harshaw as a witness. Appellant renewed his objection the next morning, asking the court to either bar Harshaw's testimony, or limit Harshaw's testimony to "facts about this incident and not his medical opinion as to the injuries," or to grant a three-week continuance to allow the defense to prepare. Appellant's objections and requests were overruled.

Dr. Harshaw's testimony was relatively brief. After identifying himself as a trauma surgeon with over twenty years' experience, he said that he was on duty when Vargas arrived in the emergency room. He testified that Vargas had serious gunshot injuries to his head, chest, and flank. There were two holes in Vargas's chest, but Harshaw had no opinion as to whether they represented two gunshots or only one. Harshaw briefly summarized the internal injuries caused by the bullets and the treatment Vargas received. During both direct and cross-examination, the doctor indicated that physicians attempt to determine the trajectory of bullets in the body in order to more effectively treat the injuries, but he did not describe or express an opinion regarding the trajectory of the bullets in Vargas's body.

The State argues that no violation of article 39.14(b) is shown because Harshaw did not testify as an expert. Instead, the State asserts that Harshaw was a "fact witness," that is, he testified only to his personal observations without expressing any opinions based on his medical knowledge and training. *See Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002) (witness with specialized knowledge may testify about personal observations under rule 701). Alternatively, the State argues even if Harshaw is considered an expert witness, the admission of his testimony was

11

not an abuse of discretion. We express no opinion as to the State's first argument, because we agree that no abuse of discretion is shown.

The decision to allow testimony by a witness who was not on the State's witness list is a matter within the trial court's discretion. *Osbourn v. State*, 59 S.W.3d 809, 814 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002). The extreme sanction of excluding testimony from evidence should not be imposed absent wilfulness or bad faith on the part of the prosecution. *Id*. Another factor to consider in determining whether there was an abuse of discretion is whether the defendant could have reasonably anticipated that the undisclosed witness would testify. *Id*.

In a prosecution for attempted murder by gunshot, it is reasonable to expect testimony regarding the victim's injuries. In this cause, the defense was notified almost five months before trial began that the State intended to call medical witnesses for that purpose. Although Dr. Harshaw's name was not given to the defense more than twenty days before trial, there is no evidence that the State deliberately withheld this information. To the contrary, it appears to have been the result of inattention or carelessness that, while not to be condoned, does not manifest bad faith. We also note that there is no evidence that appellant was harmed by Harshaw's testimony. Appellant admitted shooting Vargas; his defensive theory was that he acted in self-defense. Appellant does not cite and we do not find anything in Harshaw's testimony that was inconsistent with appellant's defense. Appellant asserts that Harshaw's testimony "touch[ed] upon bullet trajectory, an issue of utmost importance with regards to Appellant's claims of self-defense." But while the doctor did testify regarding bullet trajectory in general terms, he did not testify to the trajectory of the wounds suffered

by Vargas. Finding no abuse of discretion in the admission of Dr. Harshaw's testimony, we overrule point of error two.

### *Motion for New Trial*

Finally, in point of error three, appellant contends the district court should have granted his motion for new trial based on newly discovered evidence. *See* Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2004). The evidence in question is an article published on May 17, 2001, in the Valley News Dispatch, a Pennsylvania newspaper. The article said that Texas officials were seeking to extradite two local men, appellant and Edwards, to face attempted murder charges. The article quoted Austin Police Officer Mark Gil as saying, among other things, "About $4000 was found in Vargas's bloody jeans." Appellant argues that this evidence, which he did not discover until after his trial, supports his claim that he did not shoot Vargas in the course of a robbery. Gil was on medical leave and did not testify at the brief hearing on appellant's motion for new trial.

A defendant is entitled to a new trial pursuant to article 40.001 if: (1) the newly discovered evidence was unknown or unavailable at the time of his trial; (2) his failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on retrial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002). The decision to grant a new trial based on newly discovered evidence is committed to the discretion of the trial court. *Id.* at 37.

Although Gil was on the State's original witness list, he did not testify at appellant's trial and there is no evidence regarding the role he played in the investigation of this offense. Some

13

of the statements attributed to Gil in the newspaper article are consistent with the facts proved at trial. There is no evidence, however, corroborating Gil's alleged claim that the $4000 was found in Vargas's pocket. Under the circumstances, it would not have been an abuse of discretion for the trial court to conclude that the statement regarding the discovery of the money was not "probably true." Moreover, it was well within the court's discretion to have determined that even if the new evidence were true, it would not bring about a different result at a new trial. As previously discussed, it was not necessary for the State to prove a completed theft or successful robbery. It was only necessary for the State to prove that appellant intended to commit theft when he shot Vargas. We have already explained why we find the evidence on this point legally and factually sufficient to sustain the jury's verdict.

The district court did not abuse its discretion by overruling the motion for new trial. Point of error three is without merit.

The judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: May 20, 2004

Do Not Publish

14